IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| PROBULK CARRIERS LIMITED, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. |
| MARVEL INTERNATIONAL | * | **IN ADMIRALTY** |
| MANAGEMENT AND | | |
| TRANSPORTATION, | * | |
| LEVENT KARACELIK, | * | |
| EREGLI SHIPPING COMPANY, | * | |
| EREGLI DENIZCILIK A.S., | * | |
| Defendants, | * | |
| and | * | |
| MASTER OF M.V. CAPE ISTANBUL, | * | |
| Garnishee | | |

*     *     *     *     *     *     *     *     *     *     *     *

**VERIFIED COMPLAINT WITH REQUEST FOR ISSUANCE OF
PROCESS OF MARITIME ATTACHMENT AND GARNISHMENT**

Plaintiff Probulk Carriers Limited ("Probulk") brings this complaint against defendants

Marvel International Management and Transportation, including against its alter egos Levent

Karacelik, Eregli Shipping Company, and Eregli Denizcilik A.S. (collectively, "Marvel"), *quasi

in rem* pursuant to Supplemental Rule B for Certain Admiralty and Maritime Claims, and for a

cause of action states as follows:

**Jurisdiction and Venue**

1.      This is an action within this Court's admiralty jurisdiction pursuant to 28 U.S.C. § 1333 and is an admiralty or maritime claim within Supplemental Rule B and Fed. R. Civ. P. 9(h).

2.      Venue is proper in this Court because Marvel, operating as Eregli Shipping Company and Eregli Denizcelik A.S., owns a Vessel, M.V. CAPE INSTANBUL, which soon will be in this District.   Defendants cannot be found in this District within the meaning of Supplemental Rule B.

**The Parties**

3.      At all material times, the Plaintiff Probulk is a business entity organized and existing under the laws of Liberia.

4.      The Plaintiff Probulk is registered to do business in the State of New York as a foreign business corporation, and maintains its principal place of business in the State of New York with an office at 1215 Fifth Avenue. Suite 4A, New York, New York, 10029.

5.      The Plaintiff Probulk is engaged in the business of international shipping, operating and sub-chartering time-chartered vessels to carry cargo in international trade.

6.      Marvel is a business entity organized and existing under the laws of a foreign country, and it also known as Marvel Uluslararasi Isletmecilik ve Tasimacilik Limited Sirketia, which is Turkish for Marvel International Management and Transportation.

7.      Marvel maintains its principal place of business in Turkey with an office at Aralik No. 3, Sulun Sokak 11, Levent Mah, Besiktas, 34330, Istanbul, Turkey.

8.      Marvel is engaged in the business of international shipping, chartering and operating oceangoing vessels to carry cargo in international trade.

9.      The Defendant Levent Karacelik is an individual, who is a citizen of Turkey and resident of Istanbul, Turkey.

10.     The Defendant Levent Karacelik was the founder, the owner and the chief executive officer of Marvel.

11.     The Defendant Levent Karacelik is also the principal shareholder, a vice-chairman and the daily manager of the Defendants Eregli Denizcelik A.S. and Ergeli Shipping Company.

12.     The Defendant Eregli Denizcelik A.S. is a business entity organized and existing under the laws of a foreign country, and it maintains its principal place of business in Turkey with an office at Eksi Is Merkezi, Ord Prof Fahrettin Kerim Gokay Caddesi 12/3, Altunizade Mah, Uskudar, 34662, Istanbul, Turkey.

13.     The Defendant Eregli Denizcelik A.S. is a shipping company that provides technical and commercial management services to ship owners.

14.     The Defendant Eregli Shipping Company is a business entity organized and existing under the laws of a foreign country, and it maintains its principal place of business in Turkey with an office at Eksi Is Merkezi, Ord Prof Fahrettin Kerim Gokay Caddesi 12/3, Altunizade Mah, Uskudar, 34662, Istanbul, Turkey.

15.     The Defendant Eregli Shipping Company is a shipping company that owns and operates ocean going bulk carrier vessels that carry cargo in international trade.

16.     The Defendant Eregli Shipping Company is the registered owner of the M.V. CAPE ISTANBUL (identified by IMO number: 9446908), and the Defendant Eregli Denizcelik A.S. is the technical and commercial manager of the M.V. CAPE ISTANBUL.

## Facts

### I.     THE FACTS SUPPORTING THE CLAIMS AGAINST DEFENDANT MARVEL INTERNATIONAL MANAGEMENT AND TRANSPORTATION

#### a.   *PROBULK CHARTERED ITS VESSEL, THE M.V. IOANTHI, TO MARVEL IN 2008.*

18.      By a Time Charter Party dated May 7, 2008 (the "Charter Party"), Probulk and Marvel entered into a contract, whereby Probulk agreed to let its time-charted motor vessel, the M.V. IOANTHI, to Marvel in exchange for payments of hire.

19.      The Charter Party dated May 7, 2008 is a maritime contract.

20.      Pursuant to the Charter Party contract dated May 7, 2008, Marvel agreed to hire the M.V. IOANTHI for a period starting between December 31, 2008 and March 15, 2009 and lasting up to earliest January 15, 2010 and latest February 28, 2010.

21.      In February of 2009, Marvel indicated that it would be unable to take delivery of the M.V. IOANTHI in accordance with the terms and conditions of the Charter Party contract dated May 7, 2008.

#### b.   *MARVEL REPUDIATED THE CHARTER PARTY IN 2009.*

22.      On or about February 27, 2009, Marvel repudiated the Charter Party, when it refused to take delivery of the M.V. IOANTHI in breach of the terms and conditions of the Charter Party contract dated May 7, 2008.

#### c.   *PROBULK OBTAINED AN ARBITRATION AWARD AGAINST MARVEL IN 2013.*

23.      The Charter Party provided that, should any dispute arise between the Owners (Probulk) and Charterers (Marvel), the matter in dispute shall be referred to arbitration in London, with English law and the terms of the London Maritime Arbitrators Association to apply.

24.     The Plaintiff Probulk initiated arbitration proceedings against Marvel, alleging repudiation or renunciation of the Charter Party and seeking an award of damages caused by Marvel's breach of the Charter Party.

25.     The dispute between Plaintiff Probulk and Marvel was arbitrated in London, in accordance with the terms and conditions of the Charter Party, and the London Arbitration Panel issued a Final Arbitration Award in favor of the Petitioner Probulk on January 28, 2013 (hereinafter, the "Arbitration Award").

26.     Pursuant to the Arbitration Award, Marvel was directed to pay Probulk:

- The sum of $8,860,293.50;

- Interest on the sum of $8,860,293.50 at the rate of 5% per annum and pro rata compounded at three-monthly rests from August 15, 2009 until the date of payment;

- Petitioner Probulk's costs of the arbitration, with interest thereon at the rate of 4.5% per annum and pro rata, compounded at three-monthly rests from January 28, 2013; and,

- The costs of the Award in the event that those costs were not paid by Marvel in the first instance.

27.     On March 6, 2013, the London Arbitration Tribunal issued a Supplementary Award to correct an omission in the Final Arbitration Award, by which the London Arbitration Tribunal now awarded and directed:

> "that the charterers shall pay to the owners the sum of $9,496,481.00 (Nine million four hundred and ninety-six thousand four hundred and eighty-one United States Dollars) together with interest thereon at the rate of 5% per annum and pro rata at three-monthly rests from 15 August 2009 until the date of payment."

28.     Based on the damages awarded in the Arbitration, the amount of the judgment for the award (originally, $9,496,481.00) on the merits of the case, including interest from 15 August 2009 through 15 February 2016 ($3,298,612.65), is currently the sum of $12,795,093.65.

29.     The costs of the London Arbitration were never agreed to between the Petitioner and the Respondent, and the arbitration tribunal never determined the costs of the London.

30.     The Plaintiff Probulk demanded that Marvel promptly remit the sums due under the Arbitration Award, but Marvel failed to make any payment in satisfaction of the Arbitration Award.

### d.   *PROBULK OBTAINED A DEFAULT JUDGMENT AGAINST MARVEL IN THE SOUTHERN DISTRICT OF NEW YORK IN 2016.*

31.     On October 17, 2014, Probulk initiated an action in Southern District of New York to confirm the Arbitration Award dated January 28, 2013 and the Supplementary Arbitration Award dated March 6, 2013.

32.     The action to confirm the Arbitration Award was styled as: Probulk Carriers Limited v. Marvel International Management and Transportation, Civil Case # 1:14-cv-08338-LAK (S.D.N.Y.).

33.     The Petition to confirm the Arbitration Award was served on Marvel's registered agent in New York City, but Marvel did not appear to contest confirmation of the Arbitration Award.

34.     On February 10, 2016, the Clerk of the Court issued a Certificate of Default against Marvel.

35.     On February 16, 2016, Probulk filed a Motion for a Default Judgment against Marvel and, again, the Motion was served on Marvel's registered agent in New York City, but Marvel did not appear to contest the Motion.

36.     On April 12, 2016 The Honorable Lewis A. Kaplan, U.S.D.J., issued an Order granting Probulk's Motion for a Default Judgment against Marvel, which ordered Marvel to pay the sum of $12,795,09365, plus interest and costs to satisfy the Foreign Arbitral Award dated January 28, 2013 and the Supplemental Award dated March 6, 2013. *See Probulk Carriers Limited v. Marvel International Management and Transportation*, S.D.N.Y. Civil Case # 1:14-cv-08338-LAK, at Docket Entry number 22. This judgment was registered in Maryland on January 25, 2017. *See Probulk Carriers Limited v. Marvel International Management and Transportation*, Case # 1:17-mc-00062, at Docket Entry number 1.

37.     The action against Marvel was terminated on April 12, 2016.

      e.     *MARVEL DID NOT SATISFY THE JUDGMENT.*

38.     The Plaintiff Probulk demanded that Marvel promptly remit the sums due under the Default Judgment, but Marvel has failed to make any payment in satisfaction of the Default Judgment.

    **II.     THE FACTS SUPPORTING THE CLAIMS AGAINST DEFENDANTS LEVENT KARACELIK, EREGLI SHIPPING COMPANY AND EREGLI DENIZCILIK A.S.**

39.     Notwithstanding any formal separate incorporations of Marvel and the Defendants Eregli Shipping Company and Eregli Denizcilik A.S., the corporate Defendants were and still are a single business enterprise whose ownership and control is vested entirely with Defendant Levent Karacelik such that any distinction between any one of them and Marvel, for the purposes of the judgment rendered against Marvel, is illusory.

40.     The Defendant Levent Karacelik was the founder, the chief executive officer and the principal owner of Marvel.

41.     In addition to Marvel, the Defendant Levent Karacelik owned, controlled and operated a number of other companies under the umbrella of "The Marvel Group," which include, but are not limited to: Marvel International Managing and Transportation Ltd.; Marvel USA; Marvel Consultancy Co, Hedes; Lion Shiphilding; Megafoam Crossline Technologies; Mel Cobntructiones Ltf.; Karden Shipping Agency, Inc.; Koza Chartering, Inc.; Marvel Consultancy, Inc.; Marvel Shanhai/China; Top Construction, Inc.; Toglam Shipping; Euroteam International; Eregli Shipping Company and Eregli Denizcilik A.S.

42.     There was an overlap in ownership, officers, directors and personnel for all of the companies controlled by the Defendant Levent Karacelik under the umbrella of "The Marvel Group."

43.     Notwithstanding the fact that the companies referred to in ¶ 41 had officers and managers, all the operations and the activities of the companies referred to in ¶ 41 were subject to the Defendant Levent Karacelik's agreement and approval and the Defendant Levent Karacelik exercised complete authority over all of these companies such that none of them had any degree of business discretion other than that provided by the Defendant Levent Karacelik.

44.     All of the operations of the various Marvel companies were run out of the Defendant Levent Karacelik's office, and there was nothing going on without the Defendant Levent Karacelik saying yes or no.

45.     On occasion, the Defendant Levent Karacelik directed that all of the Marvel companies were to guarantee the obligations of a specific Marvel company that was controlled by the Defendant Levent Karacelik and such guarantees were, in fact, issued.

46.     On numerous occasions, the Defendant Levent Karacelik directed that funds be intermingled among the various Marvel companies as he required that the earnings and profits of

various companies in the Marvel Group be sent to Marvel in Turkey so that the Defendant Levent Karacelik would have cash to use for his other Marvel Group businesses.

47.     The companies operating under the umbrella of The Marvel Group were not treated as independent profit centers.

48.     There was common office space, address and telephone numbers for several of the companies operating under the Marvel umbrella and, indeed, the Defendants the Defendants Eregli Shipping Company and Eregli Denizcilik A.S. have the same address.

49.     In May of 2007, in his capacity as Deputy President of Eregli Shipping, the Defendant Levent Karacelik caused Eregli Shipping to enter into a contract to purchase a bulk carrier vessel that was to be built by Hanjin Heavy Industries of South Korea.

50.     In July of 2008, which was 2 months after Marvel contracted to charter the Probulk vessel, the Defendant Levent Karacelik was quoted in the maritime press as saying that Marvel entered into a contractual agreement to purchase two other bulk carrier vessels from Metrostar Management Corp. of Greece (hereinafter "Metrostar") that were to be built by the Jinse Shipyard in South Korea.

51.     Marvel made a substantial initial deposit to Metrostar, in the amount of $10,000,000.00, in order to secure the contracts for the purchase of the vessels to be built by the Jinse Shipyard in South Korea.

52.     Even before the two vessels were built by the Jinse Shipyard, Marvel entered into contracts to charter these two vessels out to another Korean charterer and, in those sub-charter contracts, Marvel was identified as the owner of the vessels to be built by the Jinse Shipyard.

53.     In February of 2009, Hanjin Heavy Industries commenced the construction of the vessel that had been ordered by Eregli Shipping Company.

54.     Following Marvel's repudiation of the charter party with Probulk in February of 2009, the Defendant Levent Karacelik took purposeful actions to keep Marvel undercapitalized and judgment proof.

55.     In mid-2009, as a result of the 2008 worldwide economic crisis, the Jinse Shipyard in South Korea found itself in financial difficult, it was forced to seek court protection and the Jinse Shipyard never did build the vessels that were ordered by Marvel.

56.     A year later, in mid-2010, Marvel received a refund of its down payment for the purchase of the two vessels that were to have been built by the Jinse Shipyard of South Korea from Metrostar in the approximate amount of $10,000,000.00.

57.     Because of Probulk's ongoing arbitration against Marvel, the potential liability of Marvel to Probulk and other claims pending against Marvel by entities such as Samsun Logix, the Metrostar refund, in the approximate amount of $10,000,000.00, was never paid to or credited to Marvel, but it was, instead, diverted by the Defendant Levent Karacelik to other entities controlled by the Defendant Levent Karacelik.

58.     The Defendant Levent Karacelik had previously represented to certain of his companies that they would receive a portion of the Metrostar refund, even though the money had been paid by Marvel and was owed to Marvel.

59.     Upon information and belief, a significant portion of the Metrostar refund was used by the Defendant Levent Karacelik to pay for the vessel that was built by Hanjin Heavy Industries for Eregli Shipping, which vessel was delivered to Eregli Shipping Company in May of 2011 carrying the name M.V. CAPE ISTANBUL.

60.     The M.V. CAPE ISTANBUL was chartered out to another entity when the vessel was delivered in 2011, and the M.V. CAPE ISTANBUL is still operating and gainfully employed today.

61.     When Marvel received the refund of $10,000,000.00 from Metrostar in mid-2010, Probulk was still prosecuting its claim against Marvel for repudiation of the M.V. IOANTHI charter in the London arbitration proceedings.

62.     Later, in September of 2012, while the London Arbitration was still underway and after Marvel served its defence submissions to Probulk's claims, Marvel's English counsel, Hill Dickenson LLP of London, advised Probulk's English counsel that they were no longer representing Marvel and it was, otherwise, pointless for Probulk to continue with the arbitration because Marvel had no money.

63.     Probulk, nevertheless, continued prosecuting its claim against Marvel in the London Arbitration, which ultimately resulted in a Final Arbitration Award dated January 28, 2013 in favor of Probulk and a Supplementary Arbitration Award dated March 13, 2013 in favor of Probulk.

64.     The M.V. CAPE ISTANBUL is scheduled for arrival in Baltimore on January 26, 2017.

## Count I – Breach of Maritime Contract

17.     Probulk incorporates the above paragraphs as if fully set forth herein.

18.     Marvel has breached its maritime contract with Probulk as set out above.  Despite repeated demand, Marvel remains unpaid.

19.     Probulk therefore demands judgment, as set out more fully below.

## Count II: Maritime Attachment and Garnishment (Rule B)

20.     Probulk incorporates the above paragraphs as if specifically set forth herein.

21.     Probulk seeks issue of process of maritime attachment pursuant to Supplemental Rule B.

22.     No security for Probulk's claims has been posted by Marvel or anyone acting on their behalf to date.

23.     Marvel cannot be found within this District within the meaning of Rule B, but is believed to have, or will have during the pendency of this action, property and/or assets in this jurisdiction including but not limited to the M.V. CAPE ISTANBUL, which is scheduled for arrival in Baltimore on January 26, 2017.

## Prayer for Relief

WHEREFORE, Probulk prays:

A.     That in response to Count I, judgment be entered against Marvel and in favor of Probulk in the amount of at least **USD 12,795,093.65**, plus interest and the costs of this action;

B.     That in response to Count II, since Defendants cannot be found within this District pursuant to Supplemental Rule B, this Court issue an Order directing the Clerk to issue Process of Maritime Attachment and Garnishment pursuant to Rule B attaching all of Marvel's tangible or intangible property or any other funds held by any garnishee, up to the amount of at least the amount demanded herein to secure Probulk's claims, and that all persons claiming any interest in the same be cited to appear and, pursuant to Supplemental Rule B, answer the matters alleged in the Verified Complaint;

C.      That as provided in Supplemental Rule B, that such person over 18 years of age be appointed as moved for herein pursuant to Supplemental Rule B and Fed.R.Civ.P. 4(c) to serve process of Maritime Attachment and Garnishment in this action;

D.      That this Court award Probulk such other and further relief that this Court deems just and proper.

Dated:  January 26, 2017

/s/ *Melinda L. Fithen*
J. Stephen Simms (#4269)
Melinda L. Fithen (#19804)
Simms Showers LLP
201 International Circle
Baltimore, Maryland 21030
410-783-5795
jssimms@simmsshowers.com
mlfithen@simmsshowers.com

*Counsel for Probulk Carriers Limited*

## <u>VERIFICATION</u>

I am an attorney with the law firm Simms Showers LLP, counsel to Plaintiff.

The facts alleged in the foregoing complaint are true and correct to the best of my knowledge and information based upon the records of Plaintiff made available to me by Plaintiff. Authorized officers of Plaintiff are not readily available in this District to make verifications on Plaintiff's behalf. I am authorized to make this verification on Plaintiff's behalf.

I further certify that, pursuant to Supplemental Rule B, I caused a search to be made of electronic records and Directory Assistance for addresses and telephone numbers in the District of Maryland. There is no record of any general or resident agent authorized to accept service of process for Marvel International Management and Transportation, Levent Karacelik, Eregli Denizcelik A.S., and/or Eregli Shipping Company in this District.

> Pursuant to 28 U.S.C. § 1746(1), I solemnly declare under penalty of perjury that the foregoing is true and correct.
>
> Executed on January 26, 2017.
>
> /s/ *Melinda L. Fithen*
> Melinda L. Fithen